ELIZABETH S. C. GORDON vs. SAXONVILLE MILLS.

For many years flashboards had been maintained, by a mill company, during certain months of each year, upon a dam, to the height of sixteen inches; and during the other months they were removed. On a complaint under the mill acts, arbitrators awarded damages in gross, which were accepted, and they also determined that it was necessary for the convenient and advantageous operation of the mill that the company should have and exercise the right of maintaining the dam " in the state and condition in which said dam now is." On the day of making the award, no flashboards were upon the dam. This award was accepted, and for thirteen years thereafter the company and their successors maintained flashboards upon the dam, during certain months, as before; after which time they maintained the flashboards thereon constantly. *Held*, that by the true construction of the award the mill company and their successors had a right to maintain the flashboards upon the dam during the months in which they were formerly maintained, and that damages could now be recovered only for maintaining them during the other months.

COMPLAINT under the mill acts. The following facts were agreed in the superior court:

The complainant is the owner of the land described in the complaint, and the defendants and their grantors have owned and maintained the dam for more than forty years. In 1853, and for many years before, flashboards were placed on the dam to the height of sixteen inches, on the 1st of November, and maintained there till the 1st of April in each year; but during the other months there were no flashboards on the dam. In that year the complainant brought her bill of complaint against the New England Worsted Company, from whom the defendants derived their title, for damages to her land caused by said dam, and the matter was referred to arbitrators, who, on September 24th 1853, awarded to her the sum of two dollars a year, as a just and reasonable compensation for the damages to be occasioned by the dam so long as it should be used in conformity to their award, or sixty dollars as gross damages to be thereafter occasioned by such use of said dam, and for the right of maintaining the same forever in manner aforesaid; and they determined that " it is necessary for the convenient and advantageous operation and working of the Worsted Mills " " that the said New England Worsted Company should have and exercise the right and privilege of keeping and maintaining the said dam of

the said Company in the state and condition in which said dam now is." ·This award was accepted, and the complainant accepted the sixty dollars, as gross damages. On the day of making the award, no flashboards were upon the dam. The defendants, until April 1st 1866, have maintained the flashboards upon the dam, as before the award, and contend that they had a right to do so, under the award; and since April 1st 1866 have maintained the flashboards upon the dam, for which they acknowledge their liability, and have tendered ten dollars as damages.

Judgment was rendered in the superior court, by *Putnam*, J., for the complainant; and the defendants appealed to this court.

*T. C. Hurd*, for the defendants, cited *Wilmarth* v. *Knight*, 7 Gray, 294; *Commonwealth* v. *Ellis*, 11 Mass. 462; *Lincoln* v *Whittenton Mills*, 12 Met. 31; *Peters* v. *Peirce*, 8 Mass. 398.

*R. Gordon*, for the complainant, cited, in addition, *Winkley* v. *Salisbury Manuf. Co*. 14 Gray, 443.

CHAPMAN, J. Awards were formerly construed with great strictness, but are now construed liberally, in order that the intent of the arbitrators may be effected. Kyd on Awards, 229–230. *Hawkins* v. *Colclough*, 1 Burr. 277. This case furnishes a good illustration of these two methods of construing an award. If we adopt the liberal rule, we shall look into the subject of controversy, the agreement of reference, and the circumstances of the case. It appears by such examination that, at the time of making the award, namely, September 24th 1853, the New England Worsted Company had for many years maintained a dam for working their mills, by which they had flowed the complainant's land. On the first of November in each year they had placed flashboards on the dam, which were sixteen inches in height, and kept them there till the first of the ensuing April, when they were removed, and were left off until the next November. The use of flashboards as part of a dam is quite common, and where, by the verdict of a jury, under Gen. Sts. *c*. 149, § 3, a dam is to be maintained at different heights in different seasons of the year, as this was, they are a very convenient, if not necessary, part of it. The complainant had filed a

complaint under the mill act then existing to recover damages for the flowing of her land by the dam as it was then maintained, including the use of the flashboards which the Worsted Company had been accustomed to make.   The whole matter was referred by rule of court.   The arbitrators awarded to the complainant the sum of two dollars for the amount of damage sustained by her within one year next preceding the date of the complaint.   This part of the award must of course have been founded on the use of the dam, including the flashboards, for a part of the year.   They also awarded to the complainant two dollars annually for the damage that should thereafter be occasioned by the use of the dam, so long as it should be used in conformity with the award, or sixty dollars as gross damages. If the complainant should elect to take the gross damages, it must have been manifest to the arbitrators that the interest on that sum would be much more than two dollars annually.   That part of the award which occasions the present controversy is as follows : " And we further award and determine that it is necessary for the convenient and advantageous operation and working of the worsted mills mentioned in the petition in this case that the said New England Worsted Company should have and exercise the right and privilege of keeping and maintaining the said dam of the said company in the state and condition in which said dam now is."   Having reference to the subject of controversy, to the fact that the complainant did not ask for any restriction of the customary use of the dam, to the sums awarded, and to the circumstances of the case, a liberal construction of the award leads us to believe that it referred to the state and condition of the dam throughout the year, including the use of the flashboards for a part of the year, and that the word " now " included not merely the day, but the year in which it was made.

But a literal construction of the word " now " refers to the day of making the award exclusively.   On that day the flashboards were not on the dam.   By the same construction, if the waste-gates had happened to be kept open, even for a temporary purpose, during that day, the award would require them to

be kept open during the year; or if the award had been made after the first of November, while the flashboards were on, a similar construction would have given the respondents a right to keep them on throughout the year. We cannot regard such a construction as reasonable or true.

The complainant accepted the gross damages, and they were paid, and the flashboards have been kept up as before, during some thirteen years without complaint. We think this practical construction which the parties gave to the award was right. The respondents have lately begun to use the flashboards throughout the year, admitting that the award gives them no right to do so, but claiming the right under the statute by paying the damages therein prescribed. For this additional use of the flashboards between the first of April and the first of November, the complainant is entitled to maintain her complaint, and to an order for a jury.